Bernard STROBLE et al., Plaintiffs,

v.

Russell G. OSWALD, Commissioner of Corrections of the State of New York, et al., Defendants.

Civ. No. 1972–202.

United States District Court,
W. D. New York.

July 27, 1972.

Barbara Ellen Handschu, Buffalo, N. Y., Dennis D. Cunningham, Chicago, Ill., and Daniel Pochoda, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen. of N. Y. (John H. Stenger, Sp. Asst. Atty. Gen., Buffalo, N. Y., of counsel), for defendants.

CURTIN, District Judge.

On April 24, 1972, counsel for the 71 named plaintiffs began this action seeking injunctive relief barring transfer of the plaintiffs from the Attica Correctional Facility to other correctional facilities in the State of New York. The complaint alleges that at that time the plaintiffs were confined in Housing Block Z at Attica because they were considered by state authorities to have been leaders and active participants in the inmate rebellion at Attica on September 9–13, 1971. The plaintiffs allege that their transfer from Attica to other correctional facilities throughout the state would make it impossible for them to consult with their attorneys about various legal problems, most importantly the problem of preparing a defense to indictments they expect to be handed down by the grand jury investigating the inmate uprising. They claim that their defense will be a collective one and that they are entitled to receive legal assistance as a group. Paragraph 21 of their complaint reads as follows:

> Furthermore, while there will no doubt be many separate indictments returned and separate administrative proceedings held, the case from the standpoint of the plaintiffs is one case, and their approach to the defense against the charges brought by the State will in many aspects be a common, collective one. They are dealing with the same set of facts, the same problems of criminal accountability, the same affirmative defenses. In addition, their successful defense depends absolutely upon their being able to generate public support for their cause as a group, and they must remain together to succeed in this effort.

On April 24, 1972, counsel made application to the court for a temporary restraining order barring the imminent transfer of the plaintiff-inmates. The defendants had not been served, but counsel had delivered a set of papers to John H. Stenger, a private attorney who had been retained by the state on a case-by-case basis to represent the Commissioner of Correctional Services in other problems arising at the Attica Correctional Facility. On that afternoon, Mr. Stenger appeared specially in opposition to the application for a temporary restraining order. He explained that he had not been retained and that he was not authorized to accept service. After consulting with correctional officials, however, he stated that fourteen inmates who were needed for court appearances in the Western New York area would not

be moved when the transfer, scheduled for the next day, April 25, took place. He also assured the court that any individual whose presence in court was necessary would be returned to Attica sufficiently prior to the appearance for consultation with counsel.

Following argument the court denied relief by endorsing upon the application a handwritten order which stated as follows:

Application for T.R.O. denied. This order of denial stayed until 11 A.M. 4/25/72—Respondent agrees that 14 named inmates will not be transferred. Reasons for denial of TRO given orally in open court. Filing in Forma Pauperis permitted.

(The order was erroneously dated April 25, 1972.)

On the same day, the court filed a written decision explaining in greater detail the reasons for its order.[1] The court permitted the filing of the application for a temporary restraining order in forma pauperis to give plaintiffs an opportunity to make argument in the Court of Appeals, if desired. Within a few days, the Court of Appeals and the Supreme Court declined to halt the transfer of the plaintiffs.

Subsequently, on May 1, 1972, the plaintiffs applied to this court for an order to show cause directed to the defendants. The plaintiffs sought permission to proceed in forma pauperis and a preliminary injunction barring their transfer from Attica.

The court signed an order directing the defendants to respond by May 15. In an attempt to clear up confusion engendered by statements purporting to be affidavits submitted in support of the application for injunctive relief,[2] the court added the following requirement:

Either before or on the return date, counsel for the petitioners shall provide the court with copies of the re-

---

1. The order read in part as follows:

The reasons for the denial are essentially those cited by the defendants' counsel at oral argument. The plaintiffs have failed to show how the attorney-client relationship is, as a matter of constitutional law, impaired by the transfers at this time. The state has assured the court that any individual plaintiffs whose presence is necessary at legal proceedings in this jurisdiction will be returned by the state for those occasions, and/or consultation with counsel.

None of the plaintiffs has been indicted as a result of the unrest of September 9–13, 1971. The court does not understand how, in terms of conflicts of interest, the attorneys appearing for plaintiffs today can represent all of them. It is also not clear how the absence of daily contact with these particular counsel will affect these plaintiffs at this pre-indictment point of time.

\*     \*     \*     \*     \*

At the present time there is an application by some of these plaintiffs before Judge Henderson complaining of conditions in HBZ. See Nieves v. Oswald, Civil 1971–526.

2. Many, perhaps a majority, of the "affidavits" did not qualify as such because they were not sworn to before a notary public. Apparently all of the statements had been signed by Mrs. Handschu as a notary public, but her signature was later inked out on many of them.

Almost all of the statements fell into three main groups: (1) statements indicating that the plaintiffs, together with their attorneys and "jail-house lawyers," were preparing their defenses to anticipated criminal prosecutions against them; (2) statements listing civil suits pending in the state and federal courts in which the plaintiffs were either parties or members of a represented class; and (3) statements indicating that the plaintiffs were probable witnesses in contemplated contempt proceedings in this court in Inmates of Attica Correctional Facility v. Rockefeller, Civil 1971–410.

Even a cursory reading indicated that the statements were virtually identical, apparently copied from forms prepared by counsel for the plaintiffs. For example, paragraph 7 of the statements in category (1) was apparently based on a paragraph of a form which read as follows:

7. I have, furthermore, been preparing for a possible defense to any criminal indictment with my lawyer (Ken Kimerling/ Barbara Handschu/ Michael Deutsch/ Dennis Cunningham) who has

tainer agreements with each of the petitioners, and a listing of those criminal and civil cases pending on the date this lawsuit began in which counsel represent petitioners. The listing should indicate which petitioners are included in which cases, which cases are class actions, and which counsel represent which petitioners.

At the same time, counsel for the petitioners shall thoroughly brief the following question: In view of the state's assurances as incorporated in this court's order of April 24, 1972, and the denial of any further stay of the transfers by the United States Supreme Court, and notwithstanding the references by the Court of Appeals on the absence of mootness, whether there continues to be a case or controversy before this court.

The information required by the order was sought for several reasons:

First, to aid the court in determining whether each of 71 individuals had in fact chosen one, several or all of four attorneys to represent him in a possible criminal prosecution in which his interests would be potentially in conflict with others of the group.

Second, to aid the court in determining the nature of each individual's pending actions and whether the constant presence of the individual at Attica was necessary to prosecution of the actions. This inquiry was important in light of two facts. The first was Mr. Stenger's assurance on April 24 that any individual whose presence in court was necessary would be returned to Attica. The second fact was that several of the cases cited sought injunctive relief relating to conditions at Attica and would be mooted by transfer of the plaintiffs. For example one claim involved in Nieves v. Oswald, Civil 1971–526, was that inmates of Housing Block Z were housed under harsher conditions than inmates in general population.[3]

Third, to aid the court in determining, in light of Mr. Stenger's assurances and the fact that indictments had not been returned against any of the plaintiffs, how there was a need for their continual presence at Attica and daily conferences with their attorneys. The claim that daily conferences are necessary in advance of indictment seemed preposterous both as a factual and as a legal matter.

When the parties returned to court on May 15, it was apparent that counsel for the plaintiffs had failed to comply with the order of May 1. The attorneys had filed neither the retainer statements nor

---

moved to Buffalo to assist me. If I were transferred I would not have her/his help in preparing a criminal defense.

Some of the statements copied this paragraph of the form exactly. Others deleted the names of some of the attorneys, while still others dropped the names entirely and referred merely to "my lawyer." Almost all of the statements in category (2) listed class actions in this court relating to the treatment received by the plaintiffs at Attica (e. g., Inmates of the Attica Correctional Facility v. Rockefeller, Civil 1971–410; Walker v. Mancusi, Civil 1971–485; Nieves v. Oswald, Civil 1971–526) as actions in which the plaintiffs would be prejudiced by transfer from Attica. In addition, the statements made vague references to other pending actions, but rarely did they specify the nature of the actions or the reasons why

transfer would prejudice prosecution of the actions. Some statements in category (2) made reference to actions in this court as to which the court could find no records. Finally, most of the statements in category (2) contained the assertion that "I have an injunction action pending against the Attica prison officials which would be mooted if I were transferred," but did not elaborate.

3. Mr. Stenger indicated at argument on April 24, 1972 that the transfer of the plaintiffs was intended to place them in general population while at the same time protecting the state's interest in preventing disorder and disruption at Attica. A decision relating to another claim raised in Nieves (right to counsel at disciplinary hearings) was rendered by Judge John O. Henderson on June 30, 1972.

the brief required by the order.[4] Furthermore, it was revealed that the plaintiffs had failed to serve the complaint upon the defendants and had failed to support their application to proceed in forma pauperis with affidavits of poverty. The matter was adjourned to give the plaintiffs an opportunity to remedy these failures.

On May 17, 1972, one of the plaintiffs' attorneys, Barbara Handschu, filed an affirmation in support of the plaintiffs' application for leave to proceed in forma pauperis. The affirmation stated in part that "[u]pon consultation with my colleagues, both licensed and jail-house lawyers, and upon consultation with some of the plaintiffs who still are at Attica Prison, it was determined that it would be impossible and a terrible waste of time, when such other important issues were pending before the court on the merits of this proceeding, for plaintiffs to each present their own affidavit as to their being paupers."

Mr. Stenger thereafter caused to be served upon the Attica Defense Committee on May 26, 1972 a subpoena duces tecum requiring production of certain books and records relating to the committee's finances. On May 30, 1972, the plaintiffs moved to quash the subpoena.

---

4. On May 15, Barbara Handschu, one of the plaintiffs' attorneys, submitted an affirmation which read in part as follows:

6. There are certain things which the Court can consider as sufficiently indicative of retainers under the circumstances. Whenever I or my associates visit and interview anyone at Attica, and we have visited each and evry [sic] plaintiff upon numerous occasions, the guard presents two mimeographed forms for us and for our client to sign. The form presented to the plaintiff reads something like " . . . to see _____ who is *retained* to represent me . . . " (emphasis supplied). The form which we sign is specific that we request to see "my *client*" (emphasis supplied). The actual forms would be supplied and annexed hereto but they are the property of Attica Prison and cannot be removed from there.

7. Counsel for plaintiffs would be more than willing to present either all of the mimeographed form slips which are filled out upon each visit, or the permanent books in which those slips as well as the time of the visit are inscribed, but those records are under the exclusive possession and control of Attica Prison. If an examination of these records is necessary, counsel will provide a subpoena duces tecum to be signed by the Court.

8. As further evidence of the fact that I and my associates have been "retained", it becomes proper to refer to the affidavits which were submitted by the plaintiffs in support of the Order to Show Cause herein. These affidavits, bound as Appendix I and Appendix II, already before the Court, indicate which plaintiffs are represented by which counsel.

A statement received by the court on May 17 purported to relate to the mootness question raised in the order of May 1. The statement read as follows:

Defendants' offer to return any of the plaintiffs to Attica Prison in order for the plaintiffs to appear in this Court or any other court on already pending matters has no effect whatsoever upon the status of the present action. Even a quick reading of the pleadings, including the complaint and annexed affidavits, memoranda of law, and offer of proof and affidavit in support of the motion for preliminary injunction, demonstrates that this offer by the defendants does nothing to ameliorate the intentional and continuing harm done to plaintiffs by the defendants and their mass transfer and dispersal. The relief asked for is that plaintiffs immediately be based together in an institution accessible to their attorneys on a daily basis. Plaintiffs assume that the defendants do not voluntarily agree to do this.

It should be pointed out that the state has a continuing obligation to return prisoners if their appearance is necessary in court, and, therefore, this present "offer" merely restates that the state and the defendants will obey the law. Further, in denying the appealability of the denial of the temporary restraining order, the Second Circuit Court of Appeals held that this case was not moot and should proceed to the merits, with the possibility that the defendants would be ordered to bring plaintiffs back together as a group to allow for daily contact with their lawyers.

On May 31, 1972, the court heard argument on the application for leave to proceed in forma pauperis, on the propriety of the subpoena and on the question whether the court had personal jurisdiction over the defendants.[5] Counsel for the plaintiffs submitted an affidavit by one of the plaintiffs, Mariano Gonzales, declaring himself to be a pauper. At Mr. Stenger's request, the court permitted oral examination of Mrs. Handschu, limited to questions relating to investigations which she had made to determine if the plaintiffs did in fact qualify for leave to proceed in forma pauperis. At the conclusion of argument, the court granted the plaintiffs' motion to quash the subpoena served upon the Attica Defense Committee. The relevant question was not whether the Attica Defense Committee or the attorneys employed by the committee had funds sufficient to pay filing fees, but rather whether the plaintiffs themselves had sufficient funds. If the committee had funds which it chose to use for one purpose, the state could not require it to expend the funds for another. The court granted Mr. Stenger permission to submit a memorandum directed to the questions whether the plaintiffs should be authorized to proceed in forma pauperis, *see* 28 U.S.C. § 1915(a), and whether the action should be dismissed as frivolous or malicious. *See id.* § 1915(d).

During oral argument on May 31, the court again pointed out to the plaintiffs' attorneys that they had failed to comply with the order of May 1. On June 17, the court received a final submission by the attorneys which again failed to comply with the order of May 1, but which stated that the plaintiffs "are willing to submit and ask for a ruling based upon the papers already filed." [6]

---

5. Mr. Stenger pointed out that service of the summons and complaint had still not been made in accordance with Rule 4(c) of the Federal Rules of Civil Procedure, for neither a United States Marshal nor some other person specially appointed by the court had served the defendants. Upon oral application of the plaintiffs, the court nunc pro tunc granted permission for service to be made by a person of suitable age other than a United States Marshal, but it directed the plaintiffs to provide a written order to that effect for signature and filing. Such an order was provided, signed and filed on June 6, 1972.

6. The memorandum read as follows:

Defendants' [sic] contend that the present action is "frivolous and malicious" because plaintiff's [sic] have not adequately complied with an order of this Court. This order, dated May 1, 1972, and signed by Judge John T. Curtin, requested certain information from plaintiffs'. [sic] At a hearing on May 31, 1972, the court explained for the first time why it was so interested in seeing written retainer agreements from each of the named plaintiffs. The concern seems to be that now that many plaintiffs have been transferred from Attica, they may no longer wish to pursue this action. In answer, it can be said categorically, that every plaintiff from the beginning understood and requested that this action continue if and when people were transferred from Attica to other institutions throughout the State. The expected course of this action was discussed with each plaintiff prior to the filing of the complaint, and it was anticipated by all that the application for a temporary restraining order keeping persons at Attica would be denied, and the only possibility for success was a later ruling by an Appellate Court bringing plaintiffs back together at an institution accessible to their lawyers. Almost to a man, plaintiff's [sic] predicted that in light of the consistent rulings of this court since September 14, 1971, in denying every application on behalf of those persons at Attica who have been singled out by the State as "targets" of the criminal investigation, there was no hope for any relief prior to the contemplated transfer.

Thus, it was always the assumption of plaintiffs and their lawyers that this action would continue after the transfer. In fact, as plaintiff's [sic] papers allege, those persons who were transferred are suffering irreparable injury and deprivation of fundamental rights each day, and will continue to do so until the relief requested is granted. There is, and never was, any reason to

In pertinent part, Section 1915(a) provides as follows:

Any court of the United States *may* authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, *by a person who makes affidavit* that he is unable to pay such costs or give security therefor. (Emphasis added.)

In view of the permissive nature of the statutory language, it has been said that leave "to proceed in forma pauperis in civil actions in the federal courts, is conferred as a privilege only, not as a matter of right" and that consequently the decision to grant or deny leave to so proceed "rests within the discretion of the District Court." Williams v. Field, 394 F.2d 329, 332 (9th Cir. 1968). *But cf.* Blackmun, Allowance of In Forma Pauperis Appeals in § 2255, and Habeas Corpus Cases, 43 F.R.D. 343, 344–346 (1968). Nonetheless, perhaps "the preferable procedure for the District Court to follow is to grant leave to proceed in forma pauperis if the requirements of 28 U.S.C.A. § 1915(a) are satisfied on the face of the papers submitted, and dismiss the proceeding under 28 U.S.C.A. § 1915(d) if the court thereafter discovers that the allegation of poverty is untrue or the action is frivolous or malicious." Stiltner v. Rhay, 322 F.2d 314, 317 (9th Cir. 1963).

The instant case is not one in which the requirements of Section 1915(d) "are satisfied on the face of the papers submitted." This lawsuit was not brought by Mrs. Handschu, and Mr. Gonzales is not the sole plaintiff. The statute explicitly provides that leave to proceed in forma pauperis may be granted only to persons making affidavits of poverty. As the Supreme Court wrote about a similar requirement in an earlier statute:

Under the statute the affidavit as to the poverty of the applicant is to be made by himself and not by another, even his counsel. A supporting affidavit may properly be made by the counsel, but the importance that he who is seeking the privilege accorded by the statute should be required to expose himself to the pains of perjury in a case of bad faith is plain. Pothier

---

believe that any persons desired this action to end because a temporary restraining order was denied. Finally, approximately 65 of the plaintiffs have been spoken to since the transfer, and all expect and want this action to proceed, and all request an immediate ruling on their application for a preliminary injunction.

As to the other aspect of the ruling of May 1, it can only be repeated once again that the memorandum of law filed in this court in support of plaintiffs [sic] request for a temporary restraining order remains wholly applicable. Defendants [sic] offer to return certain persons to Attica just prior to court appearances in no way affects the status of this action. Defendants specifically refused in court to voluntarily grant the relief plaintiffs have been requesting, that is, that they immediately be brought together, and kept at an institution that allows for daily access to their lawyers. As plaintiffs point out and document in their memorandum, defendants by re-

fusing to do this, and by transfering [sic] persons from Attica, intentionally and effectively denied plaintiffs' [sic] a number of basic rights, including the right of access to counsel and to the courts, and the right to adequately prepare a defense. These arguments are in no way affected by defendants [sic] present inadequate offer, and neither is the irreparable injury plaintiff's [sic] continue to suffer.

In light of the above, and the continuing irreparable injury being suffered by plaintiffs, it is requested that this court immediately rule on the application for a preliminary injunction. In light of the time factor, plaintiff's [sic], while in favor of a full evidentiary hearing with testimony from Mr. Oswald, Mr. Fischer, Mr. Montanye, and other concerned parties, are willing to submit and ask for a ruling based on the papers already filed including the complaint and affidavits, and the offer of proof and subsequent affidavits.

v. Rodman, 261 U.S. 307, 309, 43 S.Ct. 374, 375, 67 L.Ed. 670, 671 (1923).

By exposing the affiant to the risk of a prosecution for perjury, the requirement of an affidavit affords at least some protection to the policy underlying the filing fee. The filing fee requires a plaintiff "to some small degree to 'put his money where his mouth is,' it being all too easy to file suits, even with sufficient pro forma allegations, if it costs nothing whatever to do so." In re Stump, 449 F.2d 1297, 1298 (1st Cir. 1971).

Courts have strictly enforced the requirement of an affidavit of poverty, even in cases involving pro se plaintiffs. *See* Atkins v. Sullivan, 387 F.2d 140 (10th Cir. 1967); Williams v. Pierce County Board of Commissioners, 267 F.2d 866 (9th Cir. 1959). This court, however, has not rigidly required an affidavit of poverty from prisoners seeking pro se to proceed in forma pauperis, and it has freely granted leave to so proceed. In the last several years, in almost every instance where a prisoner, acting on his own, has applied to this court for permission to proceed without the payment of filing fees, this court has granted such permission. Permission to proceed without the payment of fees has been granted, even though the applications seeking relief have not contained affidavits of poverty. In 1971, leave to proceed in forma pauperis was granted for 103 applications and, in the first half of 1972, it was granted for 121 applications. Where prisoners are represented by counsel, however, it is not unfair to demand compliance with statutory requirements which are applicable to all other persons seeking leave to proceed in forma pauperis. As to all of the plaintiffs other than Mr. Gonzales, therefore, the court deems it proper to deny leave to proceed in forma pauperis in this action.

As indicated above, where the formal requirements of Section 1915(a) are met, the court still "may dismiss the case . . . if satisfied that the action is frivolous or malicious." 28 U.S. C.A. § 1915(d). In this case, the plaintiffs assert a right to remain together for the purpose of preparing a collective defense to as yet nonexistent indictments and to have the assistance of counsel at a single institution of confinement. They also claim that their prosecution of certain civil actions would be prejudiced by their transfer. In light of confusing and incomplete statements made in support of these claims, *see* note 2 *supra*, the court requested certain information from counsel for the plaintiffs. The court's order was made May 1, 1972 and, although two and a half months have elapsed and the court has twice admonished counsel, they have refused compliance. The court therefore believes that the instant action is frivolous as a practical matter and may be dismissed.

Leave to proceed in forma pauperis is denied to all of the plaintiffs other than Mariano Gonzales and, as to all plaintiffs, the case is dismissed.

So ordered.